UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAJID ALZID, Personal Representative
of the Estate of Christopher Morgan, deceased,

                Plaintiff,

v.

GIZELLE PORTER, JEFFERY STOKES,
SCOTT CORRION, JOHN DOE 1
and JOHN DOE 2,

                Defendants.

_____/

Case No. 1:21-cv-942

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

Christopher Morgan ("Mr. Morgan") was a prisoner in the custody of the Michigan
Department of Corrections (MDOC).   Mr. Morgan died from a drug overdose while incarcerated
at the MDOC's Michigan Reformatory (RMI).   Plaintiff Majid Alzid, personal representative of
Mr. Morgan's estate, filed this lawsuit pursuant to 42 U.S.C. § 1983 against corrections officer
(CO) Gizelle Porter, CO Jeffery Stokes, CO Scott Corrion, and two "John Doe" defendants for
violating the decedent's constitutional rights.   Plaintiff also alleged that defendants acted with
gross negligence as defined by M.C.L. § 691.1407(2).   Compl. (Nov. 5, 2021) (ECF No. 1).   This
matter is now before the Court on defendants' motion for summary judgment (ECF No. 52) and
plaintiff's "Motion for denial of summary judgment under Fed. R. Civ. P. 56(d)" (ECF No. 58).

1

## I.    Background

The medical examiner concluded that Mr. Morgan died "on or after November 1, 2019" and was pronounced dead at 5:58 a.m. on November 2, 2019.   Death Cert. (ECF No. 53-5, PageID.258).   The medical examiner concluded that Morgan died from "[a]cute toxicity by the combined effects of ethanol and heroin."   *Id*.   The gist of plaintiff's complaint is that defendants, three corrections officers on duty during the evening of November 1, 2019, and the morning of November 2, 2019, were deliberately indifferent to Morgan's serious medical needs and grossly negligent.

Plaintiff set forth the following allegations in the complaint.   Defendants knew or should have known that while Mr. Morgan was incarcerated at RMI, he was a heroin and opiate user and that he "previously gained access to heroin, prescription opiates, and other contraband." Comp. (ECF No. 1, PageID.4).   "On or about November 1, 2019, and/or November 2, 2019" each defendant was advised that Morgan was experiencing blurred vision which is an indication of opiate overdose.   *Id*.   Defendant CO Porter observed Morgan "making loud and unusual noises while he was asleep on or about November 1, 2019, and/or November 2, 2019."   *Id*.   Nearby prisoners "had informed Defendants that [Morgan] was in need of medical care."   *Id*.   Defendants knew or should have known that Morgan was experiencing an overdose due to his blurred vision and loud sleeping noises, but they ignored the symptoms.   *Id*.   On November 2, 2019, at approximately 5:32 a.m., defendant CO Porter passed Morgan's cell and noticed that he was not breathing.   *Id*. at PageID.5.   CO Porter called for assistance from the other defendants, someone called 911 for an ambulance at 5:40 a.m., and Morgan was pronounced dead at 5:58 a.m.   *Id*.

Plaintiff's complaint contains two counts.    In Count I, plaintiff sued defendants for deliberate indifference to Mr. Morgan's serious medical needs in violation of the Fourth, Eighth and Fourteenth Amendment.    *Id*. at PageID.5-8.    In Count II, plaintiff sued defendants for state law torts of "gross negligence, willful and wanton conduct" for disregarding Morgan's "health, safety, and constitutional statutory rights."    *Id*. at PageID.8-11.    The parties later stipulated to dismissal of the Fourth Amendment claim.    *See* Stipulation and Order (ECF No. 48).

## II.    Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).    Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.    Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).    "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."    *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).    However, the Court is not bound to blindly adopt a non-moving party's version of the facts.    "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."    *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    Defendants' motion

### A.    Eighth Amendment claim (Count I)

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."    *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).    To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived her of this federal right under color of law.    *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff contends that defendants violated Mr. Morgan's Eighth Amendment rights because they were deliberately indifferent to his serious medical needs.[1] Defendants seek summary judgment on this claim on the basis of qualified immunity, stating that their actions did

---

[1]  The Court notes that plaintiff does not set out an independent claim under the Fourteenth Amendment.    Presumably, plaintiff cited the he Fourteenth Amendment solely for its incorporation of the relevant provisions under the Eighth Amendment.    *See Robinson v. California*, 370 U.S. 660, 667 (1962).

not amount to deliberate indifference and did not violate clearly established law.   Under the affirmative defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."   *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks omitted).   The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The existence of qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established.   *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).   "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages."   *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).   "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor."   *Id*.   When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity."   *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel

and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976).   A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id*. at 8-9.   "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.   Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.  *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

In this case, the defendants are corrections officers, not medical providers.  In determining whether defendants Porter, Corrion and Stoker were deliberately indifferent to Mr. Morgan's serious medical needs, the Court views each defendant's actions as those of a layperson, not as the actions of a doctor or a nurse.  "[B]ecause police officers and prison guards are laypersons, not physicians, we must determine if a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented."  *Estate of Harbin v. City of Detroit*, 147 Fed. Appx. 566, 571 (6th Cir. 2005) (internal quotation marks, citations and brackets omitted). "As *Farmer* makes clear, the officers must not only be aware of the facts from which they could draw the inference that [a prisoner] had a serious medical need, they also must draw that inference." *Id.*, citing *Farmer*, 511 U.S. at 837.

### 1.    CO Porter

Prior to November 1, 2019, CO Porter had no interaction with Mr. Morgan.   Porter Dep. (ECF No. 53-2, PageID.244, 253).   Porter had no knowledge of whether Morgan used heroin or any other drugs, whether he had previously used drugs at RMI, or whether he ingested any illegal drugs during her shift.   *Id*. at PageID.243, 245, 252.   Porter did not know that Morgan was experiencing blurred vision.   *Id*. at PageID.246.   Morgan did not tell Porter that he was experiencing blurred vision.   *Id*.   Porter testified that during her first or second round, probably around 10:00 p.m., an inmate told her that Morgan was not feeling well after he received his medication.   *Id*. at PageID.246-247.   Porter testified that she paid special attention to Morgan that evening:

Q.    When did the inmates tell you that Morgan wasn't feeling well?

A.    It was either my first or second round.

Q.      The inmate said, hey, Morgan told me he wasn't feeling well when he went to bed around 10:00?

A.      No, he said, hey, he told me he wasn't feeling well after he took his meds earlier. Can you keep an eye on him?

Q.      What did you do in response to that?

A.      I kept an eye on him, I paid special attention when I went past his cell for most of the night.

Q.      Why did you not call medical to check on him?

A.      Why would I?

Q.      Because he said he's not feeling well after taking medication.

A.      But he was sleeping, he seemed fine. Morgan himself didn't tell me there was an issue. I had no reason to believe there was an issue beyond making sure he was safe throughout the night.

*Id*. at PageID.248 (emphasis omitted).

Mr. Morgan was in bed before CO Porter started her rounds. *Id*. at PageID.247.   A timeline prepared by RMI Inspector Bonn tracked Morgan's movements as depicted on RMI surveillance videos from 05:30 hours on November 1, 2019, through the time that EMT technicians arrived at 05:54 hours on November 2, 2019.   Insp. Bonn Memo. (ECF No. 56, PageID.291). The timeline established that at 9:08 p.m. Morgan returned to his cell (number 78) and remained inside his cell through the night.   *Id*. at PageID.290.   "During her shift, Porter conducted 15 rounds from 10:06 p.m. on November 1, 2019, to 5:32 a.m. on November 2, 2019."   Defendants' Brief at PageID.223; (citing Exh. B (ECF No. 56) and Exh. C (Video ECF No. 50-4)).[2]

---

[2]  Inspector Bonn listed the rounds conducted that night after Mr. Morgan went to bed (in military time).   The timeline for November 1, 2019 is as follows (with CO Porter's rounds numbered in parentheses): 2108.02 - Prisoner Morgan returns to his cell and remains inside his cell through the night; 2114.30 - Officer Shannon conducts the Formal Count round; 2141.39 - Officer McNitt completes a round; (1) 2206.07 - Officer Porter conducts a round and stops at Prisoner

CO Porter recalled that Mr. Morgan was in bed snoring when she made her first round.  Porter Dep. at PageID.247.  Porter did not recall when she last heard Morgan snoring. *Id*. at PageID.250.  When asked why she did not recall, Porter explained:

> Because after 12, 13, 14 rounds of him being -- seeming just fine, I just made sure he was breathing when I was going by. I didn't necessarily need to hear him snoring every time, but that last round I was just going through everything as it had happened throughout the night, as I was on my last round, and I remembered he was snoring loudly all night and wasn't then.  I decided to take a closer look, and as I was going by, I didn't see him breathing.  I looked closely to see if I saw him breathing, and didn't.

*Id*.

When asked, "[w]as there something specific you observed that led you to the conclusion he was not breathing?", CO Porter stated, "I couldn't see his chest or body moving up and down from inhaling and exhaling."  *Id*. at PageID.251.  When asked, "[h]ow long do you think you stood there to observe before coming to that conclusion?", Porter responded,

> I have no idea how long I stood there. I know he had a sheet over his body, and I was -- sometimes you can breathe shallowly from experience having done a stop many times to observe somebody breathing. It's not always the most obvious. He was laying on his side, That's why I decided I would go ahead and wake him up so I could ensure he was fine and he didn't respond.

---

Morgan's cell until 2206.21; (2) 2230.42 - Officer Porter is doing a round and stops by Prisoner Morgan's cell until 1031.30 [2231.30] She taps the bars with her round reader and appears to use her mobile radio; (3) 2259.14 - Officer Porter stops by Prisoner Morgan's cell until 1059.32 [2259.32]; (4) 2334.15 - Officer Porter doing rounds past cell 78; and, (5) 2357.36 - Officer Porter doing rounds past cell 78.   The timeline for November 2, 2019 is as follows: (6) 0029.45 - Officer Porter doing rounds past cell 78; 0056.30 - Officer MacBeth doing rounds past cell 78; (7) 0125.58 - Officer Porter does a round and stops by cell 78 until 0126.02; (8) 0202.50 - Officer Porter doing a round past cell 78; (9) 0230.35 - Officer Porter does a round past cell 78; (10) 0301 .07 - Officer Porter does a round past cell 78; (11) 0332.05 - Officer Porter does a round past cell 78; (12) 0403.40 - Officer Porter does a round past cell 78; (13) 0437.40 - Officer Porter does a round past cell 78;  (14) 0503.53 - Officer Porter does a round past cell 78; (15) 0532.38 - Officer Porter is doing a round and stops at cell 78; 0535.37- Officer Stokes arrives to cell 78 followed by Officer Corrion oat [sic] 0536.44; 0538.01- Officers' [sic] Corrion and Stokes pull Prisoner Morgan out of the cell and immediately start CPR; 0538.08 - Sergeants Breedlove and Cunningham arrive at cell 78 with the AED; 0540.46 - LPN Page arrives at cell 78 followed by RN Waber with the medical cart; and, 0554.47 - EMT Technicians arrive at cell 78.

9

*Id.*

CO Porter acknowledged that she did not advise defendant CO Corrion to bring the AED when she first called for help and provided the following explanation:

> I believe Officer Corrion responded to my initial call to Officer Stokes. I still wasn't convinced there was a serious issue. He wasn't responding, but I've been ignored before because they just aren't in the mood to respond, they're annoyed. I wasn't convinced, I wasn't sure. That's why I wanted an experienced officer to come up.

*Id.* at PageID.251. Finally, CO Porter testified that prior to calling CO Corrion and CO Stokes around 5:30 a.m., she did not have any reason to believe that Mr. Morgan was suffering from any sort of a health crisis. *Id.* at PageID.253.

As discussed in footnote one, *supra*, Inspector Bonn's timeline reflects the following events on the morning of November 2, 2019 (times approximate): at 5:32 a.m. CO Porter stopped at Mr. Morgan's cell; sometime between 5:32 a.m. and when CO Stokes arrived at 5:35 a.m., CO Porter made a radio call for assistance; at 5:36 a.m. CO Corrion arrived; at 5:38 a.m. CO Corrion and CO Stokes pulled Morgan from his cell and started CPR, with Sgts. Breedlove and Cunningham arriving at the cell with the AED; at 5:40 a.m. LPN Page and RN Waber arrived at the cell; and at 5:54 a.m. EMT technicians arrive at the cell. Insp. Bonn Memo at PageID.291. As discussed, Mr. Morgan died "on or after November 1, 2019" and was pronounced dead at 5:58 a.m. on November 2, 2019, with the cause of death being "[a]cute toxicity by the combined effects of ethanol and heroin." Death Cert. at PageID.258.

The record includes the depositions of two prisoners who were at RMI during the relevant time period. Prisoner Gilbert Lopez testified that he spoke with CO Porter regarding Mr. Morgan:

Q.    Did you ever tell Ms. Porter that you felt that she should seek immediate medical care for Mr. Morgan?

A.    Yes. I asked.

Q.    What was her response?

A.    I'm checking on him.   And when she checked on him, she tapped the bars. He started to make some type of noise like he was snoring, so she said, Oh, he's just sleeping, and she went about her round.

Lopez Dep. (ECF No. 53-6, PageID.263) (emphasis omitted).   While Lopez expressed concern for Morgan, he did not suspect that Morgan had taken illegal drugs:

Q.    Did you tell Ms. Porter that you suspected that Mr. Morgan may have taken any sort of illegal drugs?

A.    No, sir.

*Id*. at PageID.264 (emphasis omitted).

Prisoner Derrick Shirk testified that Mr. Morgan was acting odd, *e.g.*, "it appeared to me at first was that he was urinating, he was unable to pull his pants all the way up and he fell facedown into his bunk."   Shirk Dep. (ECF No. 53-7, PageID.271) (emphasis omitted).   Morgan never told Shirk that he had taken illegal drugs. *Id*.   Nor did Morgan give Shirk any information on why he was not feeling well.   *Id*.   Shirk testified that he tried to get CO Porter's attention up until about 2:30 a.m., "not just voicing my concerns, pleading with this officer to call somebody because something is wrong with this guy."   *Id*.

Based on this record, CO Porter contends that she did not have a sufficiently culpable state of mind to be liable under the Eighth Amendment, *i.e.*, that she did not perceive that Mr. Morgan was in distress.   Defendants' Brief at PageID.228.   Viewing the evidence in the light most favorable to plaintiff, the Court concludes that Porter's actions did not meet the subjective

11

prong of a deliberate indifference claim.    During the relevant time period, Porter observed Morgan on 15 different rounds.    Porter had no basis to conclude that Morgan had a medical emergency which required the intervention of a doctor or other healthcare provider; her information was based on another prisoner's statement that Morgan reported not feeling well that night and Porter's personal observations that Morgan snored.    Contrary to plaintiff's allegations, neither Morgan nor anyone else advised Porter that he had blurred vision that night.    In addition, there is no evidence that Porter knew or had a reason to know that Morgan was taking illegal drugs at RMI.    In this regard, neither prisoner Lopez nor prisoner Shirk suspected that Morgan had taken illegal drugs that night.

While it is conceivable that Porter could have performed more extensive or intrusive observations about Morgan's condition, her conduct did not rise to the level of deliberate indifference.    Even if Porter's actions could be characterized as "negligent", mere negligence is insufficient to establish a constitutional violation under the Eighth Amendment. The Eighth Amendment prohibits "obduracy and wantonness, not inadvertence or error in good faith." *Whitley*, 475 U.S. at 319.    Stated another way, the plaintiff must establish "that the official acted with a culpable enough state of mind, rising above gross negligence."  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).    Based on this record, there was no Eighth Amendment violation. Accordingly, defendant Porter's motion for summary judgment on the basis of qualified immunity should be granted.

### 2.    CO Corrion

Plaintiff alleged that CO Corrion was deliberately indifferent to Mr. Morgan's serious medical needs because "each Defendant was advised that [Morgan] was experiencing

blurred vision, which is an indication of opiate overdose," that "nearby inmates had informed Defendants that Plaintiff [sic] was in need of medical care," and that "Defendants knew or should have known based on [Morgan's] reported blurred vision and the loud and the unusual noises that Christopher made while sleeping that he was experiencing an overdose." Compl. at PageID.4.

Plaintiff makes no allegations specifically as to CO Corrion's actions during the relevant time period. "Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011). *See Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) ("It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions."). Here, CO Corrion's only personal involvement in this matter was to perform CPR on Mr. Martin. In his declaration, CO Corrion stated as follows:

> 4. I was assigned to work from 10:00 p.m. to 6:00 a.m. on November 1, 2019, and November 2, 2019, at RMI in the J-5 housing unit. The J-5 unit is a separate floor from the J-2 unit where Christopher Morgan was housed on November 1, 2019, and November 2, 2019.
>
> 5. I did not have any contact with Morgan during my shift prior to receiving a radio call from Gizelle Porter.
>
> 6. I did not become aware that Morgan was in any medical distress until I received a radio call from Gizelle Porter who was working in the J-2 unit. I responded to J-2 as soon as I received the radio call.
>
> 7. Jeff Stokes and I removed Morgan from his cell and initiated lifesaving measures.

Scott Corrion Decl. (ECF No. 53-8, PageID.277). *See also*, Insp. Bonn's Memo. (ECF No. 56). Plaintiff has failed to establish any facts to support an Eighth Amendment deliberate indifference claim against CO Corrion. Accordingly, CO Corrion's motion for summary judgment on the basis of qualified immunity should be granted.

### 3.    CO Stokes

Similarly, there is no evidence that CO Stokes had any personal involvement in the

alleged events other than to perform CPR on Mr. Martin.    In his declaration, CO Stokes stated:

> 4. I was assigned to work from 10:00 p.m. to 6:00 a.m. on November 1, 2019, and
> November 2, 2019, at RMI in the J-1 housing unit. The J-1 unit is a separate floor
> from the J-2 unit where Christopher Morgan was housed on November 1, 2019, and
> November 2, 2019.
>
> 5. I did not have any contact with Morgan during my shift prior to receiving a radio
> call from Gizelle Porter.
>
> 6. I did not become aware that Morgan was in any medical distress until I received
> a radio call from Gizelle Porter who was working in the J-2 unit.   I responded to
> J-2 as soon as I received the radio call.
>
> 7. Scott Corrion and I removed Morgan from his cell and initiated lifesaving
> measures.

Jeff Stokes Decl. (ECF No. 53-9, PageID.279).   *See also*, Insp. Bonn's Memo. (ECF No. 56).

Plaintiff has failed to establish any facts to support an Eighth Amendment deliberate indifference

claim against CO Stokes.   Accordingly, CO Stokes' motion for summary judgment on the basis

of qualified immunity should be granted.

### B.    State law gross negligence claim

Plaintiff also alleged that defendants acted with gross negligence. Compl. at

PageID.8-11.   Defendants contend that the Court should dismiss this state law claim because they

are immune pursuant to M.C.L. § 691.1407(2), which provides that:

> Except as otherwise provided in this section, and without regard to the
> discretionary or ministerial nature of the conduct in question, each officer and
> employee of a governmental agency . . . is immune from tort liability for an injury
> to a person . . . caused by the officer [or] employee . . . while in the course of
> employment . . . while acting on behalf of a governmental agency if all of the
> following are met: (a) The officer [or] employee . . . is acting or reasonably believes
> he or she is acting within the scope of his or her authority.   (b) The governmental

14

agency is engaged in the exercise or discharge of a governmental function.   (c) The officer's [or] employee's conduct does not amount to gross negligence that is the proximate cause of the injury . . .

M.C.L. § 691.1407(2).

The issue for the Court is whether the three defendants' conduct amounted to gross negligence that was *the* proximate cause of Mr. Morgan's injury.   *See Robinson v. City of Detroit*, 462 Mich. 439, 462; 613 N.W.2d 307 (2000) ("we conclude that in M.C.L. § 691.1407(2)(c); MSA 3.996(107)(2)(c) the Legislature provided tort immunity for employees of governmental agencies unless the employee's conduct amounts to gross negligence that is the one most immediate, efficient, and direct cause of the injury or damage, i.e., the proximate cause.").

Here, defendants' conduct was not the proximate cause of Mr. Morgan's injuries or death.   Morgan died from "[a]cute toxicity by the combined effects of ethanol and heroin" which arose from "Drug and ethanol use." *See* Death Cert. at PageID.258.   For purposes of M.C.L. § 691.1407(2)(c), this was *the* proximate cause of Morgan's death, *i.e.*, "the one most immediate, efficient, and direct cause of the injury".   *See Robinson*, 462 Mich. at 462.   There is no evidence of exactly when Morgan died from ingesting the ethanol and heroin.   As discussed, it was on or after November 1, 2019, and before he was pronounced dead at 5:58 a.m. on November 2, 2019.   Death Cert. at PageID.258.   There is no evidence that any of the three named defendants supplied Morgan with illegal drugs, observed him taking illegal drugs, or had knowledge that he took illegal drugs, or failed to provide treatment related to his illegal drug use.   As discussed, CO Porter conducted 15 rounds throughout her shift, during which she checked on Morgan because another prisoner told her that Morgan was not feeling well.   CO Porter's actions were not the proximate cause of Morgan's fatal injury.   CO Corrion and CO Scott had no knowledge that Morgan was in

15

distress until Porter called for their assistance after 5:30 a.m.   Their act of removing Morgan from

his cell and performing CPR was not the proximate cause of his fatal injury.   Accordingly, for

these reasons, defendants' motion for summary judgment should be granted as to the state gross

negligence claim.

### III.    John Doe defendants

Plaintiff has not identified defendants "John Doe 1" and "John Doe 2."   In *Haddad*

*v. Fromson*, 154 F. Supp. 2d 1085 (W.D. Mich. 2001), this Court addressed the use of "Doe"

defendants and explained that such defendants should be dismissed if the plaintiff fails to identify

the defendants during discovery:

> With regard to the unnamed Defendants, discovery is now closed, and
> Plaintiff has failed to amend his Complaint to identify these Defendants by name.
> In general, the use of unnamed defendants is not favored in the federal courts. *See
> Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 (5th Cir.1993). The mere naming
> of a person by use of a fictitious title does not make that person a party to a lawsuit,
> and it does not prevent the entry of final judgment.   *Nagle v. Lee*, 807 F.2d 435,
> 440 (5th Cir.1987). The appropriate treatment of Doe defendants is to delay taking
> action with regard to them until plaintiff has had an adequate time in discovery to
> identify them by name. Plaintiff has had that opportunity, but he has failed to
> properly identify the unnamed Defendants. Those Defendants will therefore be
> dismissed without prejudice.

*Haddad*, 154 F. Supp. 2d at 1093.   As in *Haddad*, discovery is closed and plaintiff has failed to

identify the Doe defendants.   Accordingly, defendants John Doe 1 and John Doe 2 should be

dismissed.

### IV.    Plaintiff's motion to deny defendants' motion for summary judgment

Plaintiff responded to defendants' motion for summary judgment by filing a motion

for denial of summary judgment under Fed. R. Civ. P. 56(d) (ECF No. 58).   In this motion,

plaintiff asks the Court to deny defendants' motion for summary judgment "because it [sic]

willfully withheld key evidence in this case and mislead Plaintiff's counsel into believing the documents did not exist."   Motion at PageID.302.    In his affidavit, plaintiff's counsel asks for additional relief not set forth in the motion: that "this defer considering the motion and depending upon what's contained in the video, allow time to take discovery on issues related to the video" and sanctions against defendants for engaging in "gamesmanship and willfully withholding this critical piece of information." Michael Jones Aff. (ECF No. 58-1, PageID.306).[3]

### A.    Lack of supporting brief

As an initial matter, plaintiff failed to file a supporting brief as required by W.D. Mich. LCivR 7.1(a) which states that:

> All motions, except those made orally during a hearing or trial, shall be accompanied by a supporting brief. Any party opposing a written motion shall do so by filing and serving a brief conforming to these rules. All briefs filed in support of or in opposition to any motion shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies. . .

Filing a brief is not a mere procedural requirement.   The parties' briefs address the factual and legal bases for the Court's adjudication of motions.   The complexity of the issues raised in plaintiff's motion is demonstrated by the fact that in order to respond to the motion, defendants filed a 10-page brief with about 100 pages of exhibits regarding discovery.   *See* Defendants' Response (ECF Nos. 62, 62-1, 62-2, 62-3, 62-4, 62-5, 62-6, 62-7, 62-8, and 62-9).   Accordingly, plaintiff's motion should be denied on that basis alone.

### B.    Affidavit in support of the motion

Fed. R. Civ. P. 56(d) provides that:

---

[3] Fed. R. Civ. P. 56(d) does not provide for an award of sanctions and plaintiff cites no basis for sanctions.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: **(1)** defer considering the motion or deny it; **(2)** allow time to obtain affidavits or declarations or to take discovery; or **(3)** issue any other appropriate order.

As the Sixth Circuit explained,

The purpose behind Rule 56(d) is to ensure that plaintiffs receive " 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A party invoking [the] protections [of Rule 56(d)] must do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact." *E.M.A Nationwide, Inc.*, 767 F.3d at 623 (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). The affidavit must "indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Ball*, 385 F.3d at 720 (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)).

*Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019).

Here, plaintiff's counsel filed an affidavit which states in part:

5. The crux of Plaintiff's Complaint is Defendants knew about Morgan's serious need for medical attention and ignored it.

6. Other inmates testified they warned Defendants several times that Morgan needed medical attention, but Defendants continued to conduct sub-standard "rounds."

7. The crucial piece of evidence in this case would be the video evidence showing the officers making rounds past Morgan's cell.

8. On or about July 22, 2022, Plaintiff served his first request for production of documents on Defendant Porter.

9. On or about August 19, 2022, Porter responded to Plaintiff's request for production of documents.

10. Defendant denied having possession, custody, or control of the requested items.

3.      All photographs, videotapes, movies, digital images, and surveillance of any kind depicting any person including Christopher Morgan, Christopher Morgan's family, or any other witness involved in this case.

**RESPONSE:** Defendants object to this RTP because it fails to specify with particularity the documents being requested. This request is also overbroad, unduly burdensome, and not proportionate to the needs of this case in that it is not limited by time or scope and requests documents that are not relevant to any fact of consequence to this action.

Subject to those objections, without waiving the same, and assuming the requested items even exist, the defendants do not have possession, custody, or control of the requested items.

11. On or about January 13, 2023, Plaintiff subpoenaed video footage from MDOC.

12. On or about January 27, 2023, MDOC responded to the subpoena and promised to provide the videos.

7.   All photographs, videotapes, movies, digital images and surveillance of any aspect of Christopher Morgan.

RESPONSE: The MDOC objects to this request, per Fed. R. Civ. P. 26(b)(l), because the burden of the discovery outweighs its likely benefit. The request does not specify any specific event, location, or time frame. Subject to the objections, and without waiving them, the MDOC will provide all video and photographs that pertain to the death of Christopher Morgan that were gathered for the Critical Incident Report, Post Incident Critique, and investigation pursuant to a mutually agreed upon protective order.

13. MDOC never produced the videos.

14. On April 17, 2023, Defendants filed a motion to allow them to file exhibits under seal. ECF No. 50, PageID#162.

15. Subsequently, Defendants filed copies of the AIM investigation, the video footage, and a video player under seal. *Id*.

16. Defense counsel refused to produce the evidence until this Court entered a protective order. ECF No. 50, PageID#165.

17. Plaintiff's counsel does not have the evidence in his custody, possession, or control. *Id.*

18. On April 17, 2023, Defendants filed a motion for summary judgment. ECF No. 52, PageID#218-19.

19. Per local rules, " . . . any party opposing a dispositive motion shall, within twenty eight (28) days after service of the motion, file a responsive brief . . ." LCivR 7.2.

20. Currently, Plaintiff's response is due May 8, 2023.

21. The facts contained in the video are unavailable to the nonmovant (Plaintiff).

22. Federal Rule of Civil Procedure 56(d) allows this Court to (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

23. Plaintiff respectfully requests this court deny Defendants' motion because of the gamesmanship and willfully withholding this critical piece of information.

24. In the alternative, Plaintiff respectfully requests this Court defer considering the motion and depending upon what's contained in the video, allow time to take discovery on issues related to the video.

25. Finally, Plaintiff respectfully requests this Court sanction Defendants and Order them to pay the reasonable attorney fee for Plaintiff's counsel needing to file this motion.

26. Plaintiff's counsel spent one and a half hours drafting this motion. His reasonable and customary rate is $475 per hour. Therefore, Plaintiff requests a sanction of $712.50 to respond to this motion.

Michael Jones Aff. at PageID.304-307).

Plaintiff's affidavit has presented an incomplete recitation of the events related to

the video evidence, did not include any exhibits, and did not include a supporting brief to provide

a legal basis for the motion.   Plaintiff's affidavit also mis-stated the due date of his response to

defendants' motion for summary judgment.[4]  In addressing plaintiff's affidavit, the Court has

reviewed the chronology of the pre-trial discovery in this lawsuit.   Because plaintiff presented no

exhibits, the Court will rely on the exhibits provided by defendants.

### C.    Timeline of discovery and related motions

**August 24, 2022**:

On this date, defendants served corrected responses to plaintiff's requests for

production of documents.   Cert. of Service (ECF No. 29); Corrected Responses (ECF Nos. 62-2

(Corrion), 62-3 (Porter), and 62-4(Stokes)).   In each of these requests, plaintiff included two

requests to produce video evidence.   Defendants objected to both.

2. All photographs, videotapes, movies, digital images and surveillance of any aspect of this case or Christopher Morgan.

**<u>RESPONSE:</u>** Defendants object to this RTP because it fails to specify with particularity the documents being requested. This request is also overbroad, unduly burdensome, and not proportionate to the needs of this case in that it is not limited by time or scope, and it requests documents that are not relevant to any fact of consequence to this action.

Subject to those objections, without waiving the same, and assuming the requested photographs and video even exist, the defendants do not have possession, custody, or control of the requested items.

---

[4] While the affidavit stated that plaintiff's response was due on May 8, 2023, that is incorrect.   Defendants e-filed their motion for summary judgment on April 17, 2023.   W.D. Mich. LCivR 7.2(c) requires that "[u]nless otherwise ordered, any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials." However, at that time, defendant had not yet served plaintiff with the video (Exhibit C).   An exhibit is part of the motion.   *See* Fed. R. Civ. P. 7(b) ("The rules governing captions and other matters of form in pleadings apply to motions and other papers."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").   Because the video evidence exhibits did not accompany the motion, plaintiff's response time did not begin to run until defendants served the exhibits (the external hard drive) on May 3, 2023.   *See* Cert. of Service (ECF No. 61). In addition, because defendants served the exhibits by UPS, three days are added after the response period would otherwise expire.   *See* Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), 3 days are added after the period would otherwise expire under Rule 6(a).").   Taking into account the additional 3 days and intervening weekend, plaintiff's response to the motion for summary judgment was not due until Monday, June 5, 2023.

3. All photographs, videotapes, movies, digital images, and surveillance of any kind depicting any person including Christopher Morgan, Christopher Morgan's family, or any other witness involved in this case.

**RESPONSE:** Defendants object to this RTP because it fails to specify with particularity the documents being requested. This request is also overbroad, unduly burdensome, and not proportionate to the needs of this case in that it is not limited by time or scope and requests documents that are not relevant to any fact of consequence to this action.

Subject to those objections, without waiving the same, and assuming the requested items even exist, the defendants do not have possession, custody, or control of the requested items.

*See* ECF No. 62-2, PageID.333-334; ECF No. 62-3, PageID.349-350; ECF No. 62-4, PageID.365-366.   Plaintiff did not file a motion to compel production of the requested documents.

**October 4, 2022**:

On this date, the Court extended the discovery deadline from December 19, 2022, to February 17, 2023.   *See* Order (ECF No. 33, PageID.122-123).   The Court also extended the deadline for filing dispositive motions from February 17, 2023, to April 17, 2023.   *Id.*

**January 13, 2023**:

On this date (35 days before the close of discovery), plaintiff served a subpoena on the MDOC and defendants' counsel seeking 20 different categories of documents. *See* Subpoena (ECF No. 62-5).   The subpoena requested that the documents be produced by February 3, 2023 (21 days).   *Id*. at PageID.384.   At request No. 7, plaintiff asked for "[a]ll photographs, videotapes, movies, digital images and surveillance of any aspect of Christopher Morgan."   *Id*.

**January 25, 2023**:

On this date, plaintiff's counsel deposed defendant CO Porter. During Porter's deposition she indicated she had reviewed "the facility video from that night."   Porter Dep. (ECF No. 62-6, PageID.388-389).   During the deposition, plaintiff's counsel interjected:

> MR. JONES: John [defendant's counsel Mr. Thurber], this was one of the things when we sent discovery, the facility video footage was not produced in the case [*see* defendants' objection (August 24, 2022) and plaintiff's subpoena to the MDOC (January 13, 2023)].   I don't know if you are willing to produce that or if you want us to file a motion to compel.
>
> MR. THURBER: No, we will produce that pursuant -- whatever that [sic] we have. We just need to work on a protective order on how to handle it, but we will make the video available to you.
>
> MR. JONES: We do this a lot with the AD's [sic] office.
>
> MR. THURBER: Right, I know you sent a subpoena as well. Under the process there will be some objections to the subpoena, but yes, the video footage, we'll get it to you, we'll work that out.   Yes, we will get it to you.

*Id*. at PageID.389.

**January 27, 2023**:

On this date, the MDOC responded to the subpoena.   *See* Cert. of Service (ECF No. 40).   In their brief, defendants stated that their response to the subpoena included the following objection to the videos:

> The MDOC objects to this request, per Fed. R. Civ. P. 26(b)(1), because the burden of the discovery outweighs its likely benefit. The request does not specify any specific event, location, or time frame. Subject to the objections, and without waiving them, the MDOC will provide all video and photographs that pertain to the death of Christopher Morgan that were gathered for the Critical Incident Report, Post Incident Critique, and investigation *pursuant to a mutually agreed upon protective order.*

23

Defendants' Response Brief (ECF No. 62, PageID.323) (emphasis added).  *See also*, Michael

Jones Aff. (ECF No. 58-1, PageID.305) (reciting subpoena request and response).

> **January 30, 2023:**
>
> On this date, plaintiff's counsel asked defendants' counsel to
>
> > Please get me a proposed protective order as soon as you can.   In the meantime, I will agree to the documents being produced subject to the order being entered.   Would you kindly produce the documents now so I can review them?

Plaintiff's email (ECF No. 62-7, PageID.392).

> **February 2, 2023**:
>
> On this date, defendants' counsel sent plaintiff's counsel an email with a draft

protective order attached, advising plaintiff's counsel that "I cannot produce any documents

covered by this protective order until we get it signed by the Court."   Defendants' email (EF No.

62-7, PageID.392).

> **February 3, 2023, through April 11, 2023:**
>
> No record of activity with respect to the protective order for the video.

> **April 12, 2023**:
>
> On this date, defendants' counsel sought plaintiff's concurrence in a motion to seal

the video and another exhibit to the motion for summary judgment:

> > Per W.D. Mich. LCivR 7.1(d), I am seeking your concurrence in a motion to file materials under seal pursuant to W.D. Mich. LCivR 10.6(b). I intend to file portions of the AIM investigation and video from November 1, 2019, and November 2, 2019, under seal.
> >
> > Please respond to this email no later than 12:00 p.m. on Thursday, April 13, 2023.

Defendants' email (ECF No. 62-8, PageID.407).

Plaintiff's counsel responded the same day expressing "no idea" as to the nature of the videos (*i.e.*, the videos at issue in the lawsuit):

> Isn't the investigation accessible through FOIA? Why would it need to be filed under seal? In addition, I have not received any videos so I have no idea what videos you are referring to.

Plaintiff's email (ECF No. 62-8, PageID.407).

**April 13, 2023**:

On this date, defendants' counsel responded to plaintiff's counsel's email regarding videos, included the February 2, 2023 email chain with the proposed protective order, and stated that "We will need to update the protective order to include additional documents that I have located since I initially sent you the protective order."   Defendants' email (ECF No. 62-8, PageID.406).

**April 17, 2023**:

On this date, defendants filed a motion to file documents under seal (ECF No. 49, PageID.160-161).   That same day, Defendants filed their motion for summary judgment (ECF No. 52, PageID.218-219).

**April 18, 2023**:

On this date, the Court granted the motion to seal (ECF No. 55, PageID.283) and defendants filed the video and Inspector Bonn's Memorandum under seal (ECF No. 56).

**April 19, 2023:**

On this date, plaintiff's counsel asked defendants' counsel, "Please provide the video which you reference as an exhibit to your Motion for Summary Judgment as soon as possible so we can prepare our Response."   *See* email (ECF No. 62-9, PageID.424).

25

**April 20, 2023**:

On this date, defendants' counsel sent plaintiff's counsel an updated version of the protective order, stating in part, "As soon as the Court signs the order, I will provide you with the video and the other documents referenced in the protective order."   *See* email (ECF No. 62-9, PageID.424.   Plaintiff's counsel responded,

> You have my permission to sign. However, if you are not going to produce the records until the order is entered, then I am going to request additional time to respond to your motion. Do you plan to oppose my affidavit for more time to respond to the motion under Rule 56(d)?

*See* email (ECF No. 62-9, PageID.423).

Defendants' counsel responded,

> I have no objection to you asking for more time to respond to the motion.   How much time do you need? Send me a proposed order to review.

*Id*.

Plaintiff's counsel responded,

> After reviewing the rule, it must be done through affidavit or declaration. Under the rule, I have the right to ask the Court deny your motion, which I am going to do.
>
> I am sure you will not concur with that. Please confirm.

*See* email (ECF No. 62-9, PageID.422).

Defendants' counsel responded,

> I'm sorry, I don't understand why you need to use Rule 56(d). We can stipulate under Fed. R. Civ. P. 6(b)(1)(A) to a reasonable extension of time for you to respond to the motion.

*Id*.

**April 21, 2023**:

On this date, plaintiff filed his "Motion for denial of summary judgment under Fed. R. Civ. P. 56(d)" (ECF No. 58) requesting that defendants' motion be denied and for sanctions against defendants.

**April 26, 2023**:

On this date, the Court entered the updated protective order for documents (ECF No. 60, PageID.310-318).

**May 3, 2023**:

On this date, defendants' counsel served plaintiff's counsel with "Michigan Department of Corrections' Fourth Supplemental Response to Plaintiff's Subpoena Dated December 7, 2022 (Served January 13, 2023) and an external hard drive containing the materials being produced" (ECF No. 61, PageID.319).

**May 4, 2023**:

On this date, defendants stated that plaintiffs received the video:

Defendants' counsel sent the materials, which includes the video they referenced in their dispositive motion, on an external hard drive via UPS overnight. According to the UPS website, Plaintiff's counsel received the external hard drive on May 4, 2023.

Defendants' Response at PageID.325.

**May 5, 2023:**

On this date, defendants e-filed their "Response to plaintiff's motion for denial of summary judgment under Fed. R. Civ. P. 56(d)" (ECF No. 62).

**June 2, 2023:**

On this date, defendants served plaintiff's counsel with the MDOC's "Fifth Supplemental Response to Plaintiff's Subpoena Dated December 7, 2022 (Served January 13, 2023)".  Cert. of Service (ECF No. 63).

**July 12, 2023:**

On this date, the parties filed a "Stipulation and Proposed Order to extend deadlines and trial date" (ECF No. 65).  In this document, "The parties stipulate to extend Settlement Conference, Final Pretrial Conference and Jury trial deadlines for at least 90 days, or at the time chosen by this Court" and "request a Status Conference with the court to discuss these matters." Stipulation at PageID.434-435.

### D.  Discussion

The gist of plaintiff's claim is that he cannot respond to defendants' motion for summary judgment without viewing the video and allowed time to take discovery on issues related to the video.   The Court considers five factors in ruling on a motion for further discovery:

> (1) when the [party seeking discovery] learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the [party seeking discovery] was dilatory in its discovery efforts; and (5) whether the [party moving for summary judgment] was responsive to discovery requests.

*Doe*, 928 F.3d at 491.

As to the first factor, plaintiff's counsel learned of the video evidence at CO Porter's deposition on January 25, 2023, and through the MDOC's response to the subpoena on January 27, 2023.

28

As to the second factor, the video evidence would not have changed the Court's ruling on the motion for summary judgment.   The Court reviewed the video evidence in deciding the motion for summary judgment.   The video evidence cited by Inspector Bonn supports the timeline in his memorandum.

As to the third factor, the discovery period in this case was extended to accommodate the parties.

As to the fourth factor, plaintiff's counsel was dilatory in some aspects of his discovery efforts.   While counsel could have filed a motion to compel with respect to defendants' August 24, 2022 objections, it is unclear what this would accomplish because defendants stated that they did not have possession of the documents.   Nevertheless, plaintiff's counsel waited over four months (January 13, 2023) to subpoena the video evidence from the MDOC.   As discussed, plaintiff's counsel knew that defendants required a protective order to obtain the video.   However, counsel took no action on the proposed protective order sent to him on February 2, 2023. Ultimately, counsel signed an updated protective order about two months after the close of discovery on April 20, 2023.

Fifth, while the individual defendants responded to the discovery requests, they did not provide candid responses to plaintiff's requests for: "All photographs, videotapes, movies, digital images and surveillance of any aspect of this case or Christopher Morgan" and "All photographs, videotapes, movies, digital images, and surveillance of any kind depicting any person including Christopher Morgan, Christopher Morgan's family, or any other witness involved in this case."   Defendants raised boilerplate objections to the requests to produce, *e.g.*, lack of specificity, overbroad and unduly burdensome.   Defendants also objected to each request as "not

29

proportionate to the needs of this case in that it is not limited by time or scope and requests documents that are not relevant to any fact of consequence to this action."    Defendants' latter objection is meritless.    MDOC officials knew that surveillance video relevant to the incident existed.    Inspector Bonn's memorandum was based upon the video and dated January 29, 2020 – more than two years before defendants responded to the discovery request. To this end, defendants further objected by stating, "*assuming the requested items even exist*, the defendants do not have possession, custody, or control of the requested items" (emphasis added).    While defendants did not have possession of the surveillance video or other documents, defendants' suggestion that the requested documents might not exist was an incomplete response.    Defendants or their counsel could have identified those documents which they knew existed.

After considering these factors, the Court concludes that plaintiff failed to meet his burden for requesting additional discovery under Fed. R. Civ. P. 56(d).    The first, fourth and fifth factors do not clearly favor either party.    Plaintiff's counsel was dilatory in pursuing discovery and defendants and their counsel did not acknowledge the existence of the surveillance video. The third factor is neutral; the Court extended discovery to accommodate all of the parties. Ultimately, the Court concludes that the second factor is dispositive of plaintiff's motion.    The video evidence (ECF No. 50-4) contains surveillance footage which supports the timeline set forth in Inspector Bonn's memorandum of the relevant period, *i.e.*, from 9:08 p.m. on November 1, 2019 (depicting Mr. Morgan entering his cell) until the video ends at 5:50 a.m. on November 2, 2019 (depicting prison staff administering CPR).    *See* PageID.290-291.    The video also supports the deposition testimony of CO Porter (depicting her rounds and actions taken during the relevant time period), and the affidavits of CO Corrion, and CO Stokes (depicting their arrival on the scene to

30

pull Mr. Morgan from the cell and administer CPR).   In summary, the events depicted on the video do not provide a basis for re-opening discovery.   Accordingly, plaintiff's motion should be denied.[5]

### IV.    Recommendation

Accordingly, I respectfully recommend that defendants' motion for summary judgment (ECF No. 52) be **GRANTED**, that plaintiff's motion to deny defendants' motion for summary judgment (ECF No. 58) be **DENIED**, that the two John Doe defendants be **DISMISSED**, and that this case be terminated.


Dated:   July 26, 2023                                /s/ Ray Kent
                                                      RAY KENT
                                                      United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[5] In reaching this determination, the Court notes that while plaintiff had access to Inspector Bonn's memorandum since April 18, 2023 (ECF No. 56) and to the video since about May 4, 2023 (ECF No. 61), he did not amend or supplement his motion with any specific information as to why he needs to perform additional discovery.